May it please the Court, I would first like to introduce my co-counsel to the Court, Susan Nelrow. May it please the Court, in our appeal, we have advanced three separate arguments on behalf of Appellant Ross Briggs. The first argument is that the record does not support the contempt finding that was issued by the Bankruptcy Court because there is no evidence that Briggs failed to comply with a turnover order by the Court and he did not make any misleading statements. The second argument we have made is a constitutional argument that the Bankruptcy Court, as an Article I court, did not have the authority to enter a final judgment imposing sanctions on Briggs because the matter before the Bankruptcy Court had no bearing on the claims allowance process or the restructuring of debtor-creditor relations and therefore constituted a private right, not a public right. The third argument we have made is that the Bankruptcy Court failed to follow the District Court rules for attorney discipline by not giving Mr. Briggs an evidentiary hearing, thus denying Briggs due process because the sanction order was based on disputed facts which occurred outside the presence of the District Court. I would like to first address the constitutional argument. Whether the Bankruptcy Court had the authority to enter a final judgment imposing sanctions on Mr. Briggs is a question of law. The standard of view here is de novo. We submit that pursuant to Stern v. Marshall, the Bankruptcy Court lacked the jurisdiction to enter a final judgment holding Briggs in contempt and imposing sanctions on him. And the reason is that the underlying proceeding that brought Briggs into this matter was a contempt action by the Court against a third party, James Robinson, in an attorney ethics investigation. That proceeding implicates only private rights, not public rights, encompassed in the claims allowance process. Well, now you're quickly to your constitutional claim, aren't you? I'm sorry? Aren't you quickly to your constitutional claim? I'm not sure I understand. Well, okay. What did you say your first point was? The first point is that there was no evidence to support the imposition of sanctions. I think you switched your order. You listed them in that order, then you decided to argue  That's what I'm trying to say. I'm sorry. I thought you were giving us a road map. Go ahead. I did start to give you a road map. That's correct. That's okay. And I did not get to... So you want to talk about the constitutional issue first? Yeah. I would like to address the constitutional issue first. Before you get too deep, what about the Steward case? What effect does the Steward decision of this Court have in this case? I think the Steward case recognizes that the bankruptcy court has the authority to impose discipline. However, I think that that discipline must be imposed by constitutional standards. In Steward, the appellate never raised a stern argument. The appellate never challenged whether the bankruptcy court had the authority. And this Court found in Steward that that right is waivable. So what happened, we believe the critical distinction between Steward and this case is that in Steward, there was never an assertion by the attorney with respect to the authority of the bankruptcy court to issue a final order. Mr. Briggs, by contrast, has argued from day one that his rights under stern mean that the bankruptcy court cannot enter a final order. We believe that is a critical distinction. Wasn't the bankruptcy judge here, though, administering the estate in the sense that he was trying to trace these fees that would have been part of the estate and this whole turnover order and whether Briggs complied with it was part and parcel of that? Your Honor, that's a very good question. What happened is that the question about the fees that the bankruptcy court raised was at best an effort to augment the bankruptcy estate, to basically say there are some fees that should be part of the estate. But it is our position that augmentation of the bankruptcy estate does not convert a private right into a public right. In the Stern case, in the Stern v. Marshall case, there were millions, perhaps tens of millions of dollars that were at stake that could have augmented the estate. But the Supreme Court said that simply augmenting the estate does not convert a private right into a public right. I'd like to note that in the Grand Financiera case, Grand Financiera was another case in which a private right was not converted to a public right. And then Judge Gorsuch, writing for the Tenth Circuit in the case of renewable energy, noted that even in Grand Financiera, that even though the bankruptcy code was implicated in that So our position is the fact that Judge Renlin was seeking to administer, or was concerned about these bankruptcy fees, that at best that would have augmented the estate, and that does not convert Mr. Briggs' private right into a public right that would thereby give the judge the authority to enter a final order. So, as I said, the reason that the underlying proceeding, the reason we believe this is a private right is the underlying proceeding was a contempt action against Robinson in this ethics investigation. And that proceeding implicated only private rights, not public rights. The ethics investigation did not involve a public right, and if it did not involve a public right, Judge Renlin did not have the authority to issue a final judgment. Say that again, you say the underlying proceeding was a contempt action against Robinson? Against Robinson, that's correct. What was it before it was a contempt action against Robinson? Before Robinson was involved, I think that What did Robinson do to go into contempt? Robinson did, as I read the Stewart opinion, there were a number of incidents that occurred in which the bankruptcy court had given Robinson direct orders that he did not comply with. So that is, and those related, as I understand it, those related to the handling of the fees by Robinson, and when he was not satisfied, when the judge was not satisfied with the responses, that's when it became a contempt proceeding. He took fees he didn't earn? Your Honor, I'm not That's what the Stewart case says, right? That's what the judge found, whether you believe it or not. Yeah, the judge found. Yeah, go ahead. That's correct. And the judge ordered, as I understand it, the judge ordered Robinson to give an accounting with those fees. Robinson then returned the fees to the debtors. And I think this is very So why wasn't that part of administering a bankruptcy case, as opposed to a contempt action? Well, I think there's several reasons. One is that my understanding is that when the debtors received the fees, they had disclosed those fees, they amended their petition to list those fees as assets of their estate, claimed those assets as exempt, and there was no objection by the bankruptcy trustee. They, therefore, were part of the bankruptcy estate of those debtors. So there was really nothing to administer. And I get back to the argument that the only point of ordering the refund of the fees or ordering the trustees, and the trustees expressed no interest in the fees, that the record will contain that Mr. Briggs, who agreed to take over those bankruptcy cases at no charge, that Mr. Briggs wrote to the trustees and said, the money has been refunded. What do you want to do with the money? Only one of the trustees responded, and he said, we have no interest. The other trustees had so little interest in those bankruptcy fees that they did not even respond to Mr. Briggs' letter. But again, we get to the point that the only purpose of that would possibly convert a private right to a public right is that this would augment the bankruptcy estate. And augmentation of the bankruptcy estate does not convert a private right into a public right and does not give the bankruptcy court additional powers over Mr. Briggs. And I would note that while, so it seems that the bankruptcy court was doing one of two things. And one of the matters was there was an investigation involving whether or not Robbins' conduct violated the Missouri rules of professional responsibility. Under the bankruptcy court was exploring, was investigating whether it should use its own powers to issue sanctions against Robinson. And I submit that under Granfin and Sierra and the case that Judge Gorsuch wrote on the 10th Circuit, that too, those actions do not convert the private right into a public right. Granfin and Sierra tells us that even when the bankruptcy statute was involved, Granfin and Sierra, as I understand it, was a case involving an alleged fraudulent transfer. And yet, even though the bankruptcy code was involved, Granfin and Sierra still considered the rights to be private. And for those reasons, we submit that Briggs' case is right on, falls well within both the Granfin and Sierra and the Stern case in that he maintained a private right. If it is a private right, there's no question that the judge did not have the authority to issue a final order, that his authority is limited to making recommendations to the district court. And if the bankruptcy court had done that, Mr. Briggs would have been tied to an evidentiary hearing at the district court and it would have been a de novo review. Instead, what happened is Mr. Briggs only received an appellate review by the district court looking for abuse of discretion as opposed to a de novo review. I'm interested in what you said was your first point, which is whether there was sufficient evidence that Briggs did indeed fail to comply with the order. Judge, I'd be very happy to address that. With regard to the findings by the bankruptcy judge were that he alleged Briggs had done two things. One, he failed to comply with We challenged the government to tell us what is it within this extraordinary 250 page opinion by Judge Renlund that tells us where these errors were and all they could point to were conclusions of law by Judge Renlund. The fact is with respect to the turnover order, Judge Renlund has acknowledged Briggs didn't represent these debtors at the time. He did not have the documents. His clients did not have the documents. Briggs had no responsibility to engage in discovery. Judge Renlund listed it in different ways. He could have asked politely, could have assisted firmly, you know, the sequence that he goes through. And your client did none of those, right? Well, no, I believe that he did. He met with Ms. Diltz. He brought, in fact, when he met with Ms. Diltz, after the meeting with the judge and the judge said you need to do something, he met with Ms. Diltz within hours. Ms. Diltz then, in fact, retained counsel. That counsel entered his appearance. So Mr. Briggs brought Ms. Diltz before the court. What was the proof? Because the judge finds he did nothing. He says he failed that litany I just told you about. You know the paragraph. Yes. So what is in the record? What evidence is there he did something? Because the judge implies if he did something, he wouldn't do anything. The evidence is, and this is uncontroverted, because there was an allegation by the trustee that Briggs met with Diltz within hours of that hearing. That's something. I mean, I don't know what more he could do when he doesn't have the records and his clients don't have the records. And he goes to the person who he thinks is most likely to have the records and that person then enters their appearance before the, enters his appearance before the court. These are which records that he's trying to get? He's trying to get, as I understand it, what Robinson did with the monies. Okay. Did he have, did he have them in a trust account? Didn't he also send a letter? Didn't Briggs also send a letter? I believe that he did. Yes, I believe he also sent a letter. And so he made a good faith effort to find information that he didn't have. And again, the judge said he wasn't, he wasn't obligated to do, to engage in discovery. I don't know what more he can do than contact the person who may have the information and get them before the court where the court can now address the issue directly rather than through a third party who has, did not represent, never had the money, didn't have the records. I don't know what more the judge would have expected Briggs to do. Well, he says he could have filed a motion requesting that the court tell the people from there to respond to the inquiries. Well, the, I think that by getting... He didn't do that, right? He did not do that. But, but I, I, I... A Rule 2004 examination, you know the list the judge, that the judge has. Right, right. And I... And you think he did the first one? He asked politely. Yes, I think he, he asked very politely. He impressed, he impressed Ms. Dills that this matter was so significant that she retained counsel... Was that a finding by the judge in, in the order we're looking at? No, but, but Your Honor, that's part of the problem is that Briggs never got an evidentiary hearing before the court. He, he basically, the judge would issue an order and say, I'm thinking about doing something. Right. But Briggs never got an opportunity to testify under oath. He was asked questions, for example, by the judge when he says he misled the court, who owns critique? And that's, and, and you know that part of the, of, of this. He said, who owns critique? And Briggs said, I don't know. He, I'm not an officer. I'm not an owner. The judge pressed him. He said, it may be Dilts, it may be Robinson. And it turns out that he was right on both counts, that there were two critiques. The judge did not specify there's a critique services and a critique services LLC. But Briggs was involved with one of them. Not at that time. Oh, okay. Yes, Briggs, Briggs... Is this one of the entities and Robinson on the other one? That is correct. That, that is, that is in the record. Isn't this one of the bases for the sanction that he misled the court in that particular colloquy? That is exactly right, your honor. And, and we, that's why we are saying that there is no, there is no factual basis for that. He asked Briggs these questions, Briggs answered the questions and, um, uh, and he was right. I don't know how that could mislead the court. I see that I'm running out of time. I'd like to very briefly, I'd like to reserve whatever time I have left, if I may. Very well. Mr. Jones, good morning. You may proceed. Good morning, your honors. May it please the court. Joshua Jones, assistant United States attorney on behalf of, uh, the FLE, the honorable, uh, Charles E. Renland III. Uh, I'd like to begin my agreement by addressing the constitutional question. Um, the first thing I think that needs to be pointed out is you're absolutely right, Judge Benton, Stewart does control.         ...didn't exist. ...didn't exist. ...didn't exist. ...didn't exist. ...didn't exist. ...didn't exist. ...didn't exist.   ...didn't exist. ...didn't exist. ...you're wrong.     ...you're wrong.   …not my fault. …not my fault. …didn't exist. ….didn't exist at all. ...didn't exist. ...didn't exist. ...didn't exist.  ...didn't exist. ...didn't exist. ...didn't exist. ...arguing that her brother-in-law interfered with a will. That was a right created by state law. The Supreme Court held that, as an Article I court, the Bankruptcy Court could not rule upon that state private right. Here, these are public rights. The Bankruptcy Court issued a turnover order pursuant to Section 542E of the Bankruptcy Code. The issue... Counsel, does that distinction hold any water because the Bankruptcy Court all the time rules on state law issues that augment the estate? Do you understand what I'm saying? All the time, the state law gives all property rights. Yes. And all the time, they're augmenting the estate. So meet your opponent's argument that saying it augments the estate's not enough. I think that the argument that it augments the estate isn't actually addressing what happened here. What happened here was that the trustees assigned to these six cases sought an accounting of what happened to the money that was paid by these six debtors. The trustees sent a letter to Mr. Briggs on December 3, 2014, asking what happened. Because, as this Court is well aware, trustees are bound to do an accounting of the estate, all the property in the estate, including unearned fees paid by debtors. Mr. Briggs responded on December 8, 2014, refusing to produce the information to the trustees. They, in turn, filed a motion for turnover under 542 and 349 of the Bankruptcy Code. The Court found, after a hearing in which Mr. Briggs appeared and argued, that the trustees were entitled to this information because it addressed the property of the estate, and that they had to have that information in order to do an accounting of the property of that estate. And I will note that Mr. Briggs, at the January 2015 hearing, said, and I quote, that he was happy to produce that information to the trustees. The Bankruptcy Court issued its order pursuant to 542E, gave Mr. Briggs until January 30th, 2015, to produce six pieces of information, which were critical to the trustees in order to do their accounting of the property and the rest of the bankruptcy estate. He failed to comply. That is what was the primary basis of the order of sanctions. It was- Let me interrupt you. The hearing you talk about was not an evidentiary hearing, right? No, it was not. Okay. Proceed. And I will note, since you've asked Judge Benton, Mr. Briggs appeared before the Bankruptcy Court in January of 2015 at a hearing. He made argument on his behalf. At no time during that hearing did he request an evidentiary hearing. He didn't ask to call a witness. He didn't ask to cross-examine anybody. He didn't ask to introduce any evidence into the record. Then Mr. Briggs appeared on February 4th, 2015, before the Bankruptcy Court again at a hearing on the record. Both of those transcripts are, by the way, in this record. At the February 2015 hearing, Mr. Briggs did not request to call a witness. He did not request to cross-examine a witness. And he did not request to introduce any evidence. When the Bankruptcy Court issued its two orders, not one, but two orders, or notices, excuse me, it gave Mr. Briggs the opportunity to respond. He did not respond by asking for an evidentiary hearing. He is only now complaining about an evidentiary hearing after having almost a year and a half between the time the Bankruptcy Court issued its turnover order to the time that the Bankruptcy Court issued its April 20th order of sanctions in 2016 to request an evidentiary hearing. He never did so. What he did do was file several pleadings as well as several different lawsuits to try to block the judge from issuing sanctions, all of which failed. Your Honors, the constitutional question is clear. Everything the Bankruptcy Court did was pursuant to the Bankruptcy Code. The Code, written by Congress, is a public right well within the jurisdiction of the Article I court to decide. Turning to Mr. Dobson's factual basis question, I think what's being lost is the standard of review. Mr. Dobson just stood before you and said, I challenge the government to produce information. The standard of review is clear. The standard of review for a factual finding is clearly erroneous. The onus is on Mr. Briggs to demonstrate a clearly erroneous finding. It's not the onus is on the government to produce or to make citations to the record. Yeah, but contempt findings have to be made with clear and convincing evidence, right? Well, I would disagree that this was a contempt finding. This was a sanction against an attorney for failing to comply with an order. The turnover order gave Mr. Briggs until January 30th, 2015, to comply. By April 20th, 2016, he failed to comply. The court, after giving him multiple notices as it was required to do and giving him a chance to respond, which he availed himself of, then issued its order of sanctions. So you say this is sanctions, right? Yes. That's abuse of discretion. Review. What do you think about that? I would- I'm quoting our cases each time I talk to you. Go ahead. I'm sorry? I'm quoting our cases each time I talk to you. Absolutely, you are. So if you're saying it's sanctions, that's abuse of discretion review, right? That's correct. And I would submit that the factual findings are for clear error. The sanctions themselves are an abuse of discretion. The factual findings are for clear error. And that's the Reynolds case, which is cited in our brief, but it's also 425 F3D 531. Now, is it a factual finding that he did nothing? I think it's in bold and italics in the original order. Absolutely, yes. That he did nothing. Do you think that's a factual finding? Yes. Yes, I do. Do you think that's accurate? Do I think the judge's finding is accurate? That he did nothing, or just-I thought the judge was saying, well, he kind of went through the motions, but he should have tried harder. He made a lame request letter to Robinson, filed affidavits, and so forth. Yes, I do believe that the judge's findings in the April 20th order are accurate. And I certainly don't think that it rises to the level of clearly erroneous. Well, is it really true that Briggs did nothing? The record is clear that the trustees sent letters to Mr. Briggs asking for the information. He responded by saying, I don't have them in my possession. At the February 4th hearing, he said, my clients don't want me to comply with the order. The record is clear that he made submissions to the court saying, I don't have this information. What the record does show is that he didn't make a good faith effort to get that information, as was his obligation as counsel for these particular debtors. Your Honors, the record that I have on the table is voluminous. It's 721 pages long. Part 3 of the April 20th order is entitled The Facts and Circumstances of These Cases, which is the facts that the bankruptcy court used for its basis to sanction Mr. Briggs, Mr. Robinson, and Critique Services. That part of the order alone spans from pages 121 to 174. It includes all of the facts in great detail about what happened that led the courts to make the decision to sanction Mr. Briggs, among others. Now I'm a question or two behind you, because did you try to tell me this is not a contempt proceeding? Before the district court, Mr. Briggs argued that this was akin to a criminal contempt proceeding, which it certainly was not. Well, counsel, the bankruptcy court says Briggs is in contempt of the order compelling turnover. He uses the term contempt, I think, more than once. But that is his bottom line. Your Honor, what happened was that the bankruptcy court decided to sanction him for failing to comply. Mr. Briggs made an argument, which he's abandoned now, but he made an argument below that this was akin to criminal contempt and that he was afforded more due process protections. He's abandoned that argument. This is certainly not a criminal contempt. Whether you want to call it a civil contempt proceeding or a sanction, the standard is relatively the same. But we have case law that says there's a different standard of review depending on whether it's contempt or sanctions, I think, if I read our two lines of cases. Your Honor, I'm not aware of which cases you might be referring. However, we have several that say contempt must be clear and convincing evidence. We have one, a per curiam, as recently as 2015. Members of this panel all in that opinion. Go ahead. I would submit that whatever standard this court decides to apply, it's been met. The record below shows that Mr. Briggs was given multiple opportunities. He was given notices twice. He was ordered to produce information no later than January 30th of 2015 and that he failed to do so. Your Honor, moreover, the judge found that he misled the court at that January 2015 hearing when Trustee Kristen Conwell submitted her affidavit regarding what she witnessed at the Crazy Bulls and Raps on Lindo Boulevard. Specifically, if you look at pages 293 and 294 of the record, Trustee Conwell went to lunch after the hearing. She just happened to see Mr. Briggs and Ms. Beverly Holmes-Dilts discussing these debtors. At the hearing that morning, Mr. Briggs had represented the court that his affiliation with Critique had ceased back in 2012 and that when asked to identify the owner of Critique, he struggled to do so. An hour later, he's having lunch with her and they're discussing these cases. I don't understand. How does that show that he knew the legal owner? Obviously, Dilts was involved with one of these entities and he knew her and he had lunch with her. But I thought the specific claim of misleading the court was that he didn't answer who owned, what was it, Critique Services? Correct. He said, could be Robinson, could be Dilts. The Secretary of State says it's Dilts. That was- I mean, if this is kind of a, the 200-page order makes it sound like this is kind of a shaky operation, why would it be so surprising that the ownership would be murky? I don't think the court was so much focused on the ownership issue. I think the court was focused- That was the question. I'm sorry? That was the question. Who owns? That was a question presented to Mr. Briggs at the hearing. But if you read the entire transcript, Mr. Briggs was also asked, why can't you get information from Critique, an entity in which he had a prior business relationship? He tried to distance himself from Critique by saying that he had no affiliation with Critique any further. So you're not relying on the answers he gave about who owns Critique? I think the court was concerned about his answers, given Ms. Conwell's affidavit. I think if you read the April 20th order, you'll see that the court was more concerned with him making the representation that he had no ability to get the information because he has no affiliation with Critique. And then an hour later, he's having lunch with the owner and operator of Critique, talking about these particular cases. You mean that shows that he could get it from her? That shows that his relationship with Critique was a lot stronger than he made the court aware of, or at least told the court an hour earlier at that January 13th, 2015 hearing. Do you agree he asked politely for the documents and other information? The other side says that he asked politely. I submit that the record shows that he told the bankruptcy court that he did it. Whether he did anything, I don't know. The record doesn't refer to anything. I thought there was a letter he sent. Maybe I'm misremembering. Well, he sent a letter on December 8th to the trustees in response to their December 3rd letter, in which he said, because I'm no longer affiliated with Critique, I don't have the documents, and therefore I'm not going to produce anything to you. But didn't he send another letter asking for information? He may have. I thought he sent such a letter and the judge said, well, that was kind of a pro forma request, and he should have been more aggressive after that. You're not remembering this? I admit I've read the record several times. My concern is whether, you know, how much, in order to avoid sanctions, how much does a person have to do if he does make a request and doesn't get anything back? How much does the lawyer then have to do further? Your Honor, I obviously have my time. If you don't remember even such a letter existing. You may complete your. Well, go ahead. Your Honor, I think that the record is clear, and if you read the April 20th order in its entirety, the bankruptcy court makes clear that the pro forma responses or attempts by Mr. Briggs were unsatisfactory, especially given his obligation to represent these debtors in bankruptcy and to do a financial investigation of the finances of the debtors that he voluntarily took on representation of. I think the bankruptcy court, if you read pages 121 to 174, makes very clear that he did not meet the burden or, you know, did not meet the minimum standard of conduct for a bankruptcy attorney who's representing Chapter 7 debtors, and that is why the bankruptcy court made its decision. Your Honor, I see that my time is up. I thank you for your time, and I ask that this court affirm the district court's opinion. Thank you. All right. Mr. Briggs did send a letter to Mr. Robinson in which he asked Mr. Robinson to comply with the court's order. He did that after the January meeting, and we'll be happy. I don't have the citation for you, but I'd be happy to supply that to the court. Please do. We certainly will. And as I mentioned, he also didn't. Is that the letter to which Judge Renlund referred, though, when he said, that's, you know, minimal effort? You could have done a lot of other things if you really were trying to represent your clients. Yeah, go ahead. I read this long opinion, and I said, what's the back story here? Doesn't Mr. Briggs understand the English language? Most lawyers that I know of would at least make some good faith effort to try to comply. Well, Your Honor, I submit to you. And I haven't seen anything yet, but maybe it's there. Maybe I have to reread that whole thing. Well, again, I submit to you that because Briggs didn't have the records, he went to the two parties that he thought would have the records. He met with Diltz as counsel acknowledges. And again, how did the bankruptcy court respond to that? The bankruptcy court did not respond at all, other than to accuse Mr. Briggs of engaging in misconduct by meeting with Ms. Diltz. He understood the gravity of the situation. That is why he met with Ms. Diltz on the same day that he appeared before the court. And he told her, this is serious. Ms. Diltz hired a lawyer, and the lawyer came in. He wrote a letter to Robinson and said, please comply. I don't know what more he could have done. His clients, he contacted his clients. His clients didn't know what Robinson did with the money. They paid the money to Robinson. He doesn't send them trust account. I thought Judge Benton read earlier a list of things that Judge Renlund said he could have done if he took advantage of the procedures available to him. What about that? Well, again, I think the finding by Judge Renlund was that he didn't do anything. The rest of the sentence is helpful to the investigation. Go ahead. I suggest that by meeting with Diltz and having Diltz enter her appearance and bringing her before the court, that is certainly helpful to the court. I don't know what more he could have done. He certainly asked Mr. Robinson. He has no authority over Robinson. He asked Robinson to comply. The contempt finding, there is not clear and convincing evidence of contempt, and the contempt finding, of course, is the basis for sanctions. With regard to Briggs requesting a hearing, he didn't know he needed an evidentiary hearing. When the sanctions order was entered, he promptly requested the district court to give him an evidentiary hearing, so he did request a hearing. The last thing I'd say is we asked the court to reverse the findings, and if the court finds there is no evidence to vacate the order and to dismiss the matter against Mr. Briggs, but we do ask if the court is inclined to remand, to please not remand it to Judge Renlund. In our motion to disqualify Judge Renlund, it is clear that he has gone to extraordinary lengths to obtain information about Mr. Briggs, well beyond what I would describe as the norms when he had his office contact the Missouri Attorney General's office. Well, how else do you deal with the David Briggs's of the world when you're a bankruptcy judge and trying to get to the heart of the matter? Do they have to temporize with people like Mr. Briggs? Your Honor, at the very least, Mr. Briggs is entitled to notice that the bankruptcy court is going outside of the record and obtaining information, and then obtaining information in which Briggs was not a party, in which the court had no supervisory,  And that had nothing to do with Briggs's failure to comply with the court's order. I mean, it's a nice side story, maybe. It's clear that Judge Renlund put little faith in the veracity of Ms. Diltz and for him now to rely upon her testimony and tell Mr. Briggs that he's going to be responsible for responding to that in a matter in which he was not a party and did not have an opportunity to participate. Thank you. There are all the cases submitted. We will take it under consideration.